**DEATH ROW PRISONERS OF PENNSYLVANIA, including, Michael Rainey, James Smith, Tyronne Moore, George Edwards, Scott Blystone and Roland Steele, for themselves and all other Pennsylvania Death Row Prisoners who are similarly situated,**

v.

**Thomas RIDGE, individually and in his official capacity as Governor of the Commonwealth of Pennsylvania; Thomas Corbett, individually and in his official capacity as Attorney General of the Commonwealth of Pennsylvania; Martin Horn, individually and in his official capacity as Commissioner of the Department of Corrections of the Commonwealth of Pennsylvania, and Other Employees and Officers of the Commonwealth of Pennsylvania Whose Identities Are Presently Not Known.**

Civil Action No. 96–3179.

United States District Court,
E.D. Pennsylvania.

Oct. 17, 1996.

Robert Brett Dunham, Billy H. Nolas, Michael Wiseman, David Wycoff, PA. Post-Conviction Defender Organization, Philadelphia, PA, Shelley Stark, Federal Public Defender's Office, Pittsburgh, PA, for Death Row Prisoners of Pennsylvania, including Michael Rainey.

Billy H. Nolas, Michael Wiseman, David Wycoff, PA. Post-Conviction Defender Organization, Philadelphia, PA, for James Smith, Tyronne Moore, George Edwards, Scott Blystone, Roland Steele.

**1262**

Sarah B. Vandenbraak, Chief, Civil & Exceptional Litigation, Philadelphia, PA, Daniel J. Doyle, Office of Attorney General, Harrisburg, PA, Syndi L. Guido, Deputy General Counsel's Office, Harrisburg, PA, for Thomas Ridge, Martin Horn.

Sarah B. Vandenbraak, Chief, Civil & Exceptional Litigation, Philadelphia, PA, Amy Zapp, Deputy Attorney General, Daniel J. Doyle, Office of Attorney General, Harrisburg, PA, Syndi L. Guido, Deputy General Counsel's Office, Harrisburg, PA, for Thomas Corbett.

## MEMORANDUM

PADOVA, District Judge.

## TABLE OF CONTENTS

I. Facts & Procedural History ............................................................. 1262
II. Defendants' Motion to Dismiss—Discussion .................................. 1264
 A. Legal Standard ...................................................................... 1264
 B. Defendants' Procedural Defenses ........................................ 1264
 1. 11th Amendment .............................................................. 1264
 2. Younger Abstention Doctrine .......................................... 1266
 3. Case or Controversy ........................................................ 1268
 C. Defendants' Substantive Defenses ....................................... 1272
 1. Redress Within the Federal Habeas Statutory Framework ..... 1272
 2. Claim Under § 1983 ......................................................... 1273
 a. Violation of a Right: Knowledge of Statute of Limitations ........... 1274
 b. Persons Acting Under Color of State Law .......................... 1275
 1. Governor Ridge ........................................................... 1275
 2. Commissioner Horn ..................................................... 1276
 3. Attorney General Corbett ............................................ 1276
 3. Plaintiffs Claim for Injunctive Relief ............................ 1277
 a. A Federal Right .............................................................. 1277
 b. Adequate Remedy at Law, i.e., Through Habeas Corpus Litigation .. 1277
 c. Irreparable Harm .......................................................... 1277
 d. Equitable Relief Requested by Plaintiffs ......................... 1277

Plaintiffs, death row prisoners in the Commonwealth of Pennsylvania, filed this action against sundry Commonwealth officials, seeking a declaratory judgement that the Commonwealth of Pennsylvania is not an "opt-in" jurisdiction as that term is used and understood in the context of the Habeas Corpus provisions of the recently enacted Antiterrorism and Effective Death Penalty Act of 1996. Pub.L. No. 104–132, 110 Stat. 1214 (1996). The named Defendants in this suit are Governor Thomas Ridge, Attorney General Thomas Corbett, and Commissioner Martin Horn of the Pennsylvania Department of Corrections ("Defendants").[1] Each Defendant is sued in his official and individual capacity. Defendants move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs have filed an Amended Motion for Class Certification and a Motion for Subclass Certification.

For the reasons that follow, I will deny Defendants' Motion to Dismiss. Plaintiffs' Amended Motion for Class Certification is dealt with in a separate memorandum and order. Plaintiffs' Motion for Subclass Certification and the underlying request for the appointment of federal habeas counsel pursuant to 21 U.S.C. § 848(q)(4)(B) will be addressed by the Court at a later date.

## I. FACTS & PROCEDURAL HISTORY

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, enacting *inter alia* a number of changes to the federal habeas corpus statutes, 28 U.S.C.A. §§ 2241–2256 (West 1994). At the heart of this lawsuit is Chapter 154 of the new law, "Special

---

1. Previously named defendants former Chief Justice of Pennsylvania Robert N.C. Nix, Jr. and Court Administrator Nancy Sobolevitch were dismissed pursuant to Plaintiffs' Motion and an Order dated September 11, 1996.

Habeas Corpus Procedures in Capital Procedures." Chapter 154 applies *inter alia* to petitions brought pursuant to 28 U.S.C.A. § 2254 by prisoners subject to a capital sentence in states that satisfy the provisions of 28 U.S.C.A. § 2261(b) and (c).

Sections 2261(b) and (c) specifically provide:

> § 2261. Prisoners in State Custody subject to capital sentence; appointment of counsel; requirement of rule of court or statute; procedures for appointment.
>
> * * * * * *
>
> (b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by state law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for state law purposes. The rule of court or statute must provide standards for the competency for the appointment of such counsel.
>
> (c) Any mechanism for the appointment, compensation and reimbursement of counsel as provided in subsection (b) must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—
>
> (1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable to competently decide whether to accept the offer;
>
> (2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or
>
> (3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

28 U.S.C.A. § 2261(b) and (c).

The law further provides that in states that fulfill the preceding requirements for providing competent counsel to capital prisoners in State post-conviction proceedings, capital prisoners must file petitions for federal habeas corpus relief pursuant to 28 U.S.C.A. § 2254 within 180 days of the final State court affirmance of their conviction and sentence on direct review or the expiration of the time for seeking such review. 28 U.S.C.A. § 2263(a). By contrast, a one-year statute of limitations applies to the filing of all other federal habeas corpus petitions. 28 U.S.C.A. § 2254(d)(1).

Plaintiffs are six death row prisoners in Pennsylvania whose convictions and sentences have been affirmed by the Pennsylvania Supreme Court. Plaintiffs argue that Pennsylvania does not meet Chapter 154's requirements for the appointment of competent counsel and, therefore, the one-year statute of limitations, as opposed to Chapter 154's 180–day limitations period, is applicable to the filing of federal habeas petitions by Pennsylvania capital prisoners. Specifically, Plaintiffs assert that Pennsylvania has enacted no statewide rule or statute providing for either the appointment and funding of counsel for state post-conviction or setting forth standards for the competency of such counsel.

Instead of a centralized, state-funded system for the appointment of counsel, Pennsylvania permits individual counties to assign counsel, without setting statewide standards for qualifications or providing state funding for the compensation of these attorneys. The counties, in turn, fail to provide adequate funding for post-conviction counsel and for related defense services such as experts or case investigators. Because Plaintiffs contend that Pennsylvania does not comply with the standards articulated in 28 U.S.C.A. § 2261(b) and (c), they seek certain declaratory and injunctive relief to prevent Chapter 154's 180–day statute of limitations from being applied to federal habeas petitions filed by all Pennsylvania capital prisoners.

Plaintiffs specifically seek the following relief: (1) a declaratory judgment that Pennsylvania does not meet the appointment of counsel requirements set forth in 28 U.S.C.A.

§ 2261(b) and (c);[2] (2) an order enjoining Defendants from asserting in any state or federal proceeding that the Commonwealth has complied with the provisions of § 2261(b) and (c), and therefore that the 180–day statute of limitations is applicable, unless and until such compliance is demonstrated to this Court; (3) an order tolling the statute of limitations for the filing of a federal habeas petition by any Pennsylvania capital prisoner pending the outcome of this case; (4) an injunction, enjoining Defendants Ridge and Horn from issuing death warrants and carrying out already-scheduled executions during the pendency of this litigation; (5) certification of a class consisting of all present and future prisoners incarcerated in Pennsylvania under a death sentence imposed by a Pennsylvania court; (6) the certification of a subclass to seek the appointment of federal habeas corpus counsel pursuant to 21 U.S.C.A. § 848(q); and (7) Plaintiffs' costs and attorney fees pursuant to 28 U.S.C.A. § 1915 (West 1994) and 42 U.S.C.A. § 1988 (West 1994).

## II. DEFENDANTS' MOTION TO DISMISS—DISCUSSION

### A. Legal Standard

■ A claim may be dismissed under Fed.R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.; see also Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989) (in deciding a motion to dismiss for failure to state a claim, the court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the nonmoving party").

### B. Defendants' Procedural Defenses

#### 1. 11th Amendment

Defendants assert that Plaintiffs' action is barred by the Eleventh Amendment. The Eleventh Amendment provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although suits against a state by its own citizens are not barred by the language of the Eleventh Amendment itself, the Supreme Court has consistently held that an unconsenting state is immune from suits in federal courts brought by the state's own citizens. *Edelman v. Jordan*, 415 U.S. 651, 663–64, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)), reh'g denied, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974). "Absent waiver, neither a State nor agencies acting under its control may be 'subject to suit in federal court.'" *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605 (1993) (citations omitted) (hereinafter "*Metcalf*"). Accord *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted).

■ Even though a State or state agency is not named as a party to an action, the suit may still be barred by the Eleventh Amendment if the "'state is the real, substantial party in interest.'" *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908 (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)); *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355–56 (same). The Supreme Court has held that a suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks money damages or injunctive relief. *Pennhurst*, 465 U.S. at 101–02, 104 S.Ct. at 908–09 (citation omitted).

■ Plaintiffs correctly argue, however, that this suit falls within the general exception to Eleventh Amendment immunity first

---

**2.** It is important to note that Plaintiffs' Complaint does not seek a declaratory judgment that Pennsylvania does not meet the provisions set forth in § 2265 for the appointment and competency of counsel in ·state "unitary review" proceedings.

articulated in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Young* held that individuals may bring suits seeking prospective, but not compensatory or other retrospective relief, against state officials in federal court challenging the constitutionality of official actions in enforcing state laws. *Metcalf,* 506 U.S. at 145, 113 S.Ct. at 688 (citation omitted); *see also* 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4232 (1988) (stating basic doctrine of *Young* as "[a] federal court is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to the supreme law of the land"). As the Supreme Court explained in a 1993 decision,

> The doctrine of *Ex Parte Young,* which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity.... Moreover, the exception is narrow: it applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past ... and has no application in suits against the States and their agencies, which are barred regardless of the relief sought.... Rather than defining the nature of Eleventh Amendment immunity, *Young* and its progeny render the Amendment wholly inapplicable to a certain class of suits. *Such suits are deemed to be against officials and not the States or their agencies,* which retain their immunity against all suits in federal court.

*Metcalf,* 506 U.S. at 146, 113 S.Ct. at 688–89 (citations omitted) (emphasis added). *Accord Kentucky v. Graham,* 473 U.S. 159, 169 n. 18, 105 S.Ct. 3099, 3107 n. 18, 87 L.Ed.2d 114 (1985) (noting that "[i]n an injunctive or declaratory action grounded on federal law, a state's Eleventh Amendment immunity *can* be overcome by naming state officials as defendants") (citing *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909); *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909 (explaining that under *Young,* "[t]he Court has recognized an important exception to the general rule [that the Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest]: a suit challenging the constitutionality of a state official's action is not one against the state;" the *Young* doctrine, however, "has not been provided an expansive interpretation" in subsequent Supreme Court jurisprudence); *Cory v. White,* 457 U.S. 85, 89, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694 (1982) (stating "accepted rule" that suits in federal court to restrain actions by state officials do not violate Eleventh Amendment if the action that plaintiff seeks to enjoin is not authorized by state law or violates federal law or the Constitution) (citing *Worcester County Trust Co. v. Riley,* 302 U.S. 292, 297, 58 S.Ct. 185, 187, 82 L.Ed. 268 (1937)).

Plaintiffs rightfully note that since they seek future declaratory and injunctive relief, i.e. both a declaration that Pennsylvania is not an opt-in state and an injunction preventing any Commonwealth official from asserting otherwise in a federal habeas petition, their case fits within the *Young* exception. Defendants acknowledge that since *Young,* the Supreme Court has allowed states to be sued in federal court for prospective injunctive relief in order to end continuing violations of the Constitution and/or federal law. *See Seminole Tribe of Florida v. Florida,* — U.S. —, —, 116 S.Ct. 1114, 1132, 134 L.Ed.2d 252 (1996) (citing *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 900, 88 L.Ed.2d 933 (1986)).

Defendants argue, however, that Plaintiffs have not alleged any continuing violation of the Constitution and/or federal law by Defendants that would make the *Young* exception applicable in the instant case. Defendants specifically state that no Commonwealth official, particularly none of the defendants named in this action, has ever attempted to defend a federal habeas action by asserting that the 180–day statute of limitations is applicable. Plaintiffs persuasively counter that because Commonwealth officials refuse to acknowledge that the Commonwealth does not meet Chapter 154's counsel requirements and because they could assert such in any individual prisoner habeas case, Plaintiffs'

uncertainty, by design of Commonwealth officials, is an on-going condition that impinges upon their right to bring habeas actions in violation of their due process, Eighth Amendment, and equal protection rights.[3]

I conclude that the relief Plaintiffs seek falls under the *Young* exception to Eleventh Amendment immunity.

### 2. Younger Abstention Doctrine

■ In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held, in a case challenging the constitutionality of a state criminal statute, that if at the time the federal suit is filed there is a pending state criminal prosecution against the federal petitioner under the challenged statute, a federal court must not stay or enjoin the pending state criminal proceedings, nor can the court issue a declaratory judgment that the statute is unconstitutional, except under special circumstances. *Id.* at 41 & n. 2, 91 S.Ct. at 749 & n. 2. *Accord Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975), *reh'g denied,* 421 U.S. 1017, 95 S.Ct. 2425, 44 L.Ed.2d 686 (1975).

The fundamental policy against federal court interference with a pending state criminal prosecution can only be overcome if the petitioner shows that he has no adequate remedy at law and that he will suffer irreparable injury that is both great and immediate unless the federal court grants the requested equitable relief, or that the state criminal proceedings were brought in bad faith for purposes of harassment. *Younger,* 401 U.S. at 43–49, 91 S.Ct. at 746, 750–53 (citations omitted). *See also Kugler,* 421 U.S. at 124–25, 95 S.Ct. at 1531 (1975) (holding that circumstances warranting exception to *Younger* abstention must be "extraordinary" in that they create "an extraordinarily pressing need for immediate federal relief, not merely in the sense of presenting a highly unusual fact situation").

Underlying this policy are comity concerns and the fact that the federal petitioner is offered an opportunity to raise his constitutional claims in the pending state court proceedings and thus has an adequate remedy at law. *Younger,* 401 U.S. at 43–44, 49, 91 S.Ct. at 750, 753. *See also* 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4252 (1988) (noting that the "core of the rule laid down in *Younger v. Harris* ... is that a federal court, in the absence of unusual circumstances, cannot interfere with a pending state criminal prosecution").

The Supreme Court has extended the *Younger* doctrine to prohibit federal courts from enjoining state *civil* proceedings that implicate important state interests. *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't,* 973 F.2d 169, 173 (3d Cir.1992) (citing *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)).

It is important to note, however, that a "district court's discretion to abstain is quite narrow, and limited to those cases that meet the abstention requirements established by the Supreme Court." *Id.* (citing *United Servs. Auto. Ass'n v. Muir,* 792 F.2d 356, 361 (3d Cir.1986) (noting that "a district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements"), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987)).

Drawing on Supreme Court case law, the Third Circuit has articulated three prerequisites to the invocation of *Younger* abstention:

> (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims.

> Whenever all three of these requirements are satisfied abstention is appropriate absent a showing of bad faith prosecution, harassment, or a patently

---

**3.** Defendants also separately argue that the since the Commonwealth is an "indispensable party" to this suit, the Eleventh Amendment requires dismissal. This is just a variation on the argument that the Commonwealth is the "real, substantial party in interest" discussed *supra.*

unconstitutional rule that will cause irreparable injury to the plaintiff.

*Port Auth. Police Benevolent Ass'n,* 973 F.2d at 173 (citing *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir.1989)). *See also id.* at 176 (explaining circumstances in which abstention is inappropriate even when the three *Younger* requirements are met).

Defendants argue that *Younger* directs this Court to abstain from granting the equitable relief requested in this case because many of Pennsylvania's death row prisoners have pending state court criminal proceedings.[4] According to Defendants, Plaintiffs seek a declaratory judgment relating to procedures for appointing counsel in state court litigation, and this is squarely precluded by *Younger,* citing in support *Luckey v. Miller,* 976 F.2d 673, 677–78 (11th Cir.1992) (holding *Younger* abstention doctrine barred jurisdiction over class action challenging adequacy of state's indigent criminal defense system and seeking injunctive and declaratory relief), *reh'g denied,* 983 F.2d 1084 (11th Cir.1993).

Plaintiffs point out that the first and third requirements for *Younger* abstention, as articulated in *Port Auth. Police Benevolent Ass'n supra,* are not met. With regard to the first prong, Plaintiffs do not seek any relief related to, affecting, or interfering with a pending or potential state court proceeding. Instead, Plaintiffs seek relief pertaining to the applicable statute of limitations in *federal* habeas proceedings.

Plaintiffs also point out that the third prong of *Younger* abstention is not satisfied. Plaintiffs cannot raise and litigate the claim at the core of this civil rights litigation—that Pennsylvania is not an opt-in state and the 180-day limitations period is inapplicable to *federal* habeas petitions—in their *state* court direct appeals and post-conviction proceedings.

It is true that the relief requested in this suit would prevent state officials from asserting in a *federal* habeas proceeding that a prisoner's habeas petition was untimely and thus barred because it was not filed within

Chapter 154's 180-day limitations period. Constraining the defenses that a state official can raise in a *federal* habeas proceeding, however, would not affect any future state proceeding.

Also, Plaintiffs correctly point out that they do not seek relief that would affect the appointment or compensation of counsel for indigent prisoners in state post-conviction proceedings. Plaintiffs simply seek an order declaring that the Commonwealth does not meet Chapter 154's opt-in requirements (and therefore the 180-day limitations period does not apply) and enjoining Commonwealth officials from arguing otherwise in federal habeas suits. The Complaint does not request the Court to issue an order mandating changes in the state's system (or non-system as Plaintiffs argue) for the appointment/compensation of counsel for indigent defendants. For these reasons, the Court concurs with Plaintiffs that Defendants' reliance upon *Luckey* is misplaced.

Plaintiffs note that *Younger* abstention is always inappropriate when a *federal* statute is at issue in a federal suit, citing in support *Pic–A–State Pa, Inc. v. Reno,* 76 F.3d 1294, 1300 (3d Cir.1996) (holding that equitable injunctive relief was available from federal court in case challenging constitutionality of federal criminal statute, because a federal statute was at issue and there was no pending state criminal proceeding), *cert. denied,* —— U.S. ——, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996) and *Pacific Merchant Shipping Ass'n v. Aubry,* 918 F.2d 1409, 1421 n. 22 (9th Cir.1990), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992). To the extent that Plaintiffs are relying on these two cases for the proposition that *Younger* abstention is always inappropriate whenever a federal statute is involved, the holdings do not support that proposition. Central to holding that jurisdiction in those cases was proper was a finding that there was no pending state criminal prosecution and/or no ongoing state adjudication of the claims in the federal case. *Pic–A–State* and *Pacific Merchant,* however, do support Plain-

**4.** Specifically, as of the May 1, 1996 hearing, 76 prisoners had direct appeals pending and 61 were litigating claims pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa.Cons.Stat. Ann. § 9543(a) (1996).

**1268**

tiffs' contention that *Younger* abstention is inappropriate when there are no state criminal or civil proceedings adjudicating the claims at issue in the federal court.

The Court, therefore, agrees with the Plaintiffs that the *Younger* abstention doctrine does not compel the court to abstain from hearing this case.

### 3. Case or Controversy

Defendants argue that there is no justiciable case or controversy before the Court as required by Article III of the United States Constitution. While Defendants phrase their argument in the more general terms of the "case or controversy" requirement, the essence of Defendants' argument is that the case is not ripe. Ripeness doctrine, which focuses on *when* an action may be brought, evolved from Article III's case or controversy requirement. *See Pic–A–State,* 76 F.3d at 1298 n. 1 (citing *Armstrong World Indus. v. Adams,* 961 F.2d 405, 411 n. 13 (3d Cir. 1992)). Since the "case or controversy" requirement and ripeness doctrine are essentially two sides of the same coin, they are treated together below.

■ Article III, section 2 of the Constitution limits federal jurisdiction to actual "cases" and "controversies." U.S. Const. Art. III, § 2. The case or controversy requirement is a direct prohibition on advisory opinions, *see Armstrong,* 961 F.2d at 410 (citing *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968)), and must be met regardless of the type of relief sought, including declaratory or injunctive relief. *Id.* (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950)); *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio,* 40 F.3d 1454, 1462 (3d Cir.1994) (citing *inter alia Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95, 113 S.Ct. 1967, 1974, 124 L.Ed.2d 1 (1993)). To satisfy Article III's case or controversy requirement, an action must present a legal controversy that

(1) is real and not hypothetical; (2) affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication; and (3) sharpens the issues for the court's resolution. *Armstrong,* 961 F.2d at 410 (citing *Int'l Bhd. of Boilermakers v. Kelly,* 815 F.2d 912, 915 (3d Cir.1987); *Los Angeles v. Lyons,* 461 U.S. 95, 101–05, 103 S.Ct. 1660, 1665–67, 75 L.Ed.2d 675 (1983)).

With respect to actions seeking declaratory relief under the Declaratory Judgment Act,

> [t]he difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, *the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.*

*Id.* (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941) (internal quotations omitted) (emphasis added)). *See also Step–Saver Data Sys., Inc. v. Wyse Technology,* 912 F.2d 643, 647 (3d Cir.1990).[5]

■ The Declaratory Judgment Act gives district courts a considerable amount of discretion. Even when a declaratory action is ripe, the Act gives the Court the power to issue a declaration but does not require the Court to do so. *Id.* at 646–47; *Armstrong,* 961 F.2d at 410 n. 9 (citation omitted).

Declaratory judgments are issued before an injury has been established or a statute has been enforced against a party, and, therefore, there is some inherent tension between declaratory judgments and the concept of ripeness. *Step–Saver,* 912 F.2d at 647; *see also Presbytery of N.J.,* 40 F.3d at 1463

**5.** The Declaratory Judgment Act provides:
In the case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
28 U.S.C.A. § 2201(a) (West 1994).

(noting that ripeness is properly understood as involving a question of when a party may seek preenforcement review of a statute or regulation) (citation omitted). Nevertheless, a federal court only has jurisdiction when the plaintiff himself has suffered some threatened or actual injury from the alleged illegal conduct. *Presbytery of N.J.,* 40 F.3d at 1463 (citing *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

To determine the ripeness of declaratory judgment actions the Third Circuit has held that a court should look to the following three factors, among others: (1) the *adversity* of interest between the parties; (2) the *conclusiveness* of a judicial judgment; and (3) the practical help, or *utility,* of a judgment. *Pic–A–State,* 76 F.3d at 1298; *Freehold Cogeneration Assoc., L.P. v. Bd. of Regulatory Comm'rs of N.J.,* 44 F.3d 1178, 1188 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 68, 133 L.Ed.2d 29 (1995); *Presbytery of N.J.,* 40 F.3d at 1463; *Armstrong,* 961 F.2d at 411; *Step–Saver,* 912 F.2d at 647.

■ With regard to the *adversity* element, a plaintiff need not have suffered a completed harm to establish this element. *Armstrong,* 961 F.2d at 412 (citing *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983)). The plaintiff, however, must still demonstrate that the probability of that future event occurring is "real and substantial," or of "sufficient immediacy and reality." *Presbytery,* 40 F.3d at 1463 (citing *Salvation Army v. Dep't of Community Affairs,* 919 F.2d 183, 192 (3d Cir.1990)); *Armstrong,* 961 F.2d at 412 (same). Thus, for example, in situations in which a party has not yet been prosecuted under a statute, the Third Circuit has held that adversity is established when the government does not expressly state that it will *not* prosecute. *See e.g., Pic–A–State,* 76 F.3d at 1299.

■ "The *conclusivity* inquiry ... goes to whether the parties' rights will be definitively decided by the declaratory judgment." *Step–Saver,* 912 F.2d at 649 n. 9. Thus, a case is only ripe when it involves "real and substantial controversy admitting of specific relief through a decree of *conclusive charac-*

*ter, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Pic–A–State,* 76 F.3d at 1300 (citing *Step–Saver,* 912 F.2d at 649) (internal quotations omitted) (emphasis added). The need for a concrete set of facts, however, is not as great when the question presented is predominately legal in nature; therefore, predominately legal questions are generally amenable to a conclusive determination in a preenforcement context. *Id.; Presbytery of N.J.,* 40 F.3d at 1468. Examples of questions that are "predominately legal" include whether a state statute or regulation is preempted by federal law and whether a state or federal statute is constitutional on its face. *Pic–A–State,* 76 F.3d at 1300 (citations omitted).

■ The utility prong focuses on " 'whether the parties' plans of action are likely to be affected by a declaratory judgment.' " *Pic–A–State,* 76 F.3d at 1300 (quoting *Step–Saver,* 912 F.2d at 649 n. 9); *Presbytery of N.J.,* 40 F.3d at 1469 (same). In other words, are the parties likely to change their conduct after the declaratory judgment is issued. The rationale of the utility requirement is that one of the primary purposes of the Declaratory Judgment Act is to clarify legal relationships so that parties can "make responsible decisions about the future." *Armstrong,* 961 F.2d at 412 (citing *Step–Saver,* 912 F.2d at 649).

Inexplicably, neither Plaintiffs nor Defendants systematically apply in their briefs the three criteria set forth in the Third Circuit case law cited above. Instead, Defendants analogize the instant case to a number of Supreme Court cases in which the Court found that the claims were not ripe for review.

Defendants first argue that the parties' interests are not sufficiently adverse because the question of what is the appropriate statute of limitations need not be resolved until a Commonwealth official argues for the first time that a federal habeas petition is untimely under Chapter 154. A justiciable case or controversy does not exist, Defendants argue, unless and until that occurs. Moreover, they argue, it is premature for the Court to

rule today on whether Pennsylvania meets Chapter 154's counsel requirements because when and if a Commonwealth official asserts the 180–day limitations period in defending a habeas action, the Commonwealth may very well meet the opt-in requirements. Defendants further contend that Plaintiffs have not demonstrated that the probability of that event occurring is "real and substantial" or "of sufficient immediacy" to warrant issuance of a declaratory judgment.

Defendants analogize the instant case to four previous cases—*Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979); *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Int'l Longshoremen's & Warehousemen's Union, Local 37 v. Boyd,* 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); and *Public Serv. Comm'n of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952)—in which the Court held that a case did not present a justiciable case or controversy and/or was unripe for review.

At oral argument on August 22, 1996, Counsel for Governor Ridge stated that Defendants' "best" case supporting the proposition that this matter is not ripe was *Int'l Longshoremen's.* (Tr. Oral Argument 8/22/96 at 22). *Int'l Longshoremen's* involved an action for declaratory and injunctive relief against the INS to prevent the INS from construing a statute such that aliens domiciled in the continental U.S. returning from temporary work in Alaska would be treated as if they were aliens entering the U.S. for the first time. Plaintiffs sought a ruling that the statute would not be applied to them in the event that they did, in fact, leave the country for Alaska and then return. The Court dismissed the action for lack of jurisdiction. The Second Circuit has noted that while *Int'l Longshoremen's* has never been expressly overruled, it has been politely overlooked by the Supreme Court for at least ten years. *Itzcovitz v. Selective Serv. Local Board No. 6,* 447 F.2d 888, 891 n. 7 (2d Cir.1971). The threat to plaintiffs in *Int'l Longshoremen's* was hypothetical. In the instant case, however, the threat is not merely hypothetical but actual.

Plaintiffs rely heavily on the Supreme Court's holding in *Abbott Lab. v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). *Abbott* was a suit by drug companies against federal officials, seeking declaratory and injunctive relief to prevent these officials from enforcing certain regulations that had not yet been enforced against the companies on the grounds that the officials exceeded their statutory authority in promulgating the challenged regulations. *Id.* at 138–39, 87 S.Ct. at 1510. The Court held that the case was ripe for review even though plaintiffs sought "preenforcement" relief. *Id.* at 149, 87 S.Ct. at 1515.

The *Abbott* Court noted that the issue presented was purely a legal one: whether a federal official properly construed a federal statute in promulgating the challenged regulations. *Id.* The Court further found the impact of the regulation on plaintiffs was "sufficiently direct and immediate" to render the case ripe for review, because the regulations put plaintiffs "in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate:" either the drug companies had to incur the costs of complying with the regulation, or they must follow their present course and risk criminal prosecution and/or serious civil penalties. *Id.* at 152–53, 87 S.Ct. at 1517–18. As the Court further found,

> [T]o require [plaintiffs] to challenge these regulations only as a defense to an action brought by the Government might harm them severely and unnecessarily. Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs ... access to the courts under the ... Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance. . . .

*Id.* at 153, 87 S.Ct. at 1518.

Plaintiffs argue that Defendants' refusal to acknowledge that Pennsylvania does not fulfill Chapter 154's counsel requirements similarly puts Plaintiffs in a "dilemma": Either Plaintiffs have to assume that the 180–day limitations applies and give up the extra six months to which they would be entitled un-

der Chapter 153 to prepare a federal habeas petition if Pennsylvania does not fulfill Chapter 154's opt-in requirements, or Plaintiffs have to assume that Pennsylvania does not meet the Chapter 154 requirements, take the full year to file a habeas petition, and risk a "serious penalty," i.e. dismissal of their petition for untimeliness. In *Ashmus v. Calderon*, 935 F.Supp. 1048, 1056 (N.D.Cal.1996), similar to the case *sub judice*, the court noted the following:

> Without a judicial determination of the rights and responsibilities of the parties to this action, prisoners under sentence of death by the State of California must necessarily guess as to whether and how Chapter 154 may constrain their ability to seek redress in the federal courts for deprivations of their constitutional rights. The absence of a clear and uniformly applicable determination that the State of California has or has not complied with the provisions of Chapter 154 forces all condemned prisoners to choose between the risk of unknowingly relinquishing their entitlement to federal habeas procedures under Chapter 153, or the risk of unknowingly forfeiting any enforcement of their federal constitutional rights.

Defendants argue here, as well as in other parts of their briefs, that Plaintiffs can avoid any injury by taking a "conservative stance" and filing within the 180-day time frame. Plaintiffs argue that this position is untenable given the legislative history of the 1996 Act. Chapter 154 largely codified the proposal of the Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, also known as the "Powell Committee Report." *See* House Comm. on the Judiciary, Effective Death Penalty Act of 1995, H.R.Rep. No. 23, 104th Cong., 1st Sess., at WL *11, 13 (hereinafter "House Report No. 23") (citing Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, Report on Habeas Corpus in Capital Cases, 45 Crim.L.Rep. (BNA) (Sept. 27, 1989) (hereinafter "Powell Committee Report")). The legislation establishes a "quid pro quo arrangement" whereby states receive the benefit of stronger finality rules on federal habeas review and the 180-day time limit for filing petitions "in return for" creating a system for the appointment of competent counsel in state collateral attacks. *Id.* at WL *13. Requiring states to appoint competent counsel in exchange for Chapter 154's benefits "fill[s] the gap in representation for indigent capital defendants in state proceedings under existing law, since appointment of counsel for indigents is constitutionally required for the state trial and direct appeal." *Id.*

Plaintiffs contend that if they do as Defendants suggest and file within 180 days, they *de facto* waive their right to a one-year limitations period under Chapter 154 without receiving the corresponding benefit of counsel as set forth in Chapter 154. Defendants, in turn, would *de facto* receive the benefits of Chapter 154's shorter statute of limitations and stronger finality rules without having to provide competent counsel as required by Chapter 154. Such a scenario would circumvent the explicit *quid pro quo* that Congress enshrined in Chapter 154. *See also Ashmus*, 935 F.Supp. at 1057 (finding "[D]efendants' assertions would thus secure for the State the benefits of the Act, regardless of whether California actually provides the competent counsel that states are required by Congress to give plaintiffs as a quid pro quo for receiving [Chapter 154's] benefits.") (citing Powell Committee Report; House Report No. 23).

■ Applying the criteria set forth by the Third Circuit in *Step–Saver*, and followed in *Pic–A–State, Freehold, Presbytery of N.J.*, and *Armstrong*, the Court concludes that this case is ripe for review. With respect to adversity, Defendants' refusal to state whether Pennsylvania is "in or out" appears to violate their Eighth Amendment, due process, and equal protection rights. Further, it would be a violation of Plaintiffs' federal statutory rights under the new law for Defendants to raise the 180-day statute of limitations as a defense in a federal habeas action if Pennsylvania does not meet the Chapter 154 counsel requirement. Defendants argue that this case is not ripe because no Commonwealth official has yet asserted the 180-day limitations period in a habeas action. Under the Third's Circuits teachings in *Pic–A–State* and *Presbytery of N.J., supra*, however, adversity can be es-

tablished because here Defendants have not explicitly stated. that they will *not* raise the 180–day limitations period in defending a federal habeas proceeding, and this omission fetters the exercise of Plaintiffs' federal right to petition for habeas. Thus, the adversity prong is met.

■ If this Court grants the death row prisoners' requested relief, it will be established that Plaintiffs have one full year, as opposed to six months, within which to bring their habeas actions. Furthermore, if this case is resolved in Plaintiffs' favor, the Commonwealth will have no right to invoke the six month statute of limitations as a defense to a federal habeas action, until such time as it meets the requirements of Chapter 154. As the parties' rights will be firmly established as a consequence of the requested adjudication, the conclusivity prong is met.

■ Finally, a judicial resolution at this time would be useful in that the parties would structure their future actions accordingly. Plaintiffs and Defendants would know whether Plaintiffs have to file within 180 days or one year. Both sides will also know whether Plaintiffs' petitions would be subject to the stronger finality rules of Chapter 154. Thus, a declaratory action would affect how the parties prepare, file, and defend habeas actions. Thus, the utility prong is met.

Accordingly, the Court considers this case ripe for adjudication.

### C. Defendants' Substantive Defenses

#### 1. Redress Within the Federal Habeas Statutory Framework

■ "[W]here Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex Parte Young." Seminole Tribe,* —— U.S. ——, ——, 116 S.Ct. 1114, 1132, 134 L.Ed.2d 252 (1996). Defendants argue that Congress has created just such a detailed remedial scheme, as set forth in the federal habeas corpus statutes, 28 U.S.C.A. §§ 2241–2256, through which a prisoner can raise a claim that he is being held in violation of his consti-

tutional rights. Defendants further argue that by creating the federal habeas statutory framework, Congress intended to define and to limit significantly the manner in which state prisoners could attack their convictions and sentences.

Defendants contend that because Plaintiffs' Complaint includes a request for relief "that has the practical effect. of precluding Pennsylvania from carrying out its criminal sentences," Plaintiffs must pursue the relief they seek in the instant action through the habeas corpus statutes, citing in support *Preiser.v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

In *Preiser,* plaintiffs brought an action under § 1983, alleging that they had been unconstitutionally deprived of good-time conduct credits as a result of disciplinary proceedings within the prison. They sought injunctive relief to restore the credits, which would result in their immediate release from prison. The question presented to the Court was whether plaintiffs could seek the requested relief under § 1983 even though the federal habeas statute clearly provided a specific federal remedy. The Supreme Court held that when a state prisoner is challenging the fact or duration of his imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release from such imprisonment, the prisoner's *sole* federal remedy is a writ of habeas corpus. "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of their confinement, and that specific determination must override the general terms of § 1983." *Id.* at 490, 93 S.Ct. at 1836. According to *Preiser,* Federal-state comity, as reflected in the strong policy of requiring exhaustion of state remedies before the filing of a habeas petition, is the reason why habeas is the only federal vehicle by which prisoners can challenge their conviction/sentence.

In his own brief, Defendant Corbett states that while Plaintiffs are not directly challenging their detention, the instant action is a "prelude" to such a challenge and, therefore, Plaintiffs must pursue the relief they request

herein through federal habeas because Congress intended habeas to be the exclusive remedial scheme for state prisoners challenging their detention. Defendant Corbett cites in support *Middlesex County Sewerage Auth. v. Nat. Sea Clammers,* 453 U.S. 1, 13–21, 101 S.Ct. 2615, 2622–27, 69 L.Ed.2d 435 (1981); *Smith v. Robinson,* 468 U.S. 992, 1009–13, 104 S.Ct. 3457, 3467–69, 82 L.Ed.2d 746 (1984).

To resolve this issue, the Court must focus on exactly what kind of relief Plaintiffs seek in the instant action and determine whether (1) Congress intended that the federal habeas statutory framework be the exclusive avenue for Plaintiffs' claims and the relief they seek herein and (2) the federal habeas scheme indeed provides a mechanism by which Plaintiffs can obtain that relief.

Plaintiffs seek a declaration that Pennsylvania does not fulfill Chapter 154's counsel requirements and an injunction preventing any Commonwealth official from asserting the 180–day limitation period in defending a federal habeas action by a death row prisoner. This action does not challenge the validity or length of any individual Plaintiff's custody. For this reason, Plaintiffs contend that the rights asserted and relief sought herein are not the type that can only be secured through federal habeas relief under the Court's holding in *Preiser.*

Plaintiffs seek declaratory and injunctive relief that relates to the *manner* in which their habeas claims are adjudicated and not the outcome of that adjudication, i.e. they are not seeking a determination going to the fact or duration of their custody. The claims and remedies sought herein are not precluded simply because they are "related to" or are a "prelude" to habeas litigation. Plaintiffs further argue that Defendants cannot meet the heavy burden of establishing that Congress has "expressly withdrawn" the remedies sought in this action and that allowing Plaintiffs to proceed with their claims under § 1983 would be "inconsistent" with the federal habeas scheme. In fact, Defendants fail to explain exactly how any prisoner could actually use habeas corpus to vindicate the rights asserted in this action or to obtain the relief sought herein. A plaintiff cannot file an individual habeas writ requesting the declaratory and injunctive relief sought in the instant action. Either a prisoner will have to file within 180 days "to play it safe" as Defendants suggest, or file within the one-year period and run the risk that he guessed incorrectly that Pennsylvania was not an opt-in state and forfeit his right to habeas corpus. If Plaintiffs were forced to raise the instant claim within the context of a habeas proceeding, they would, in effect, be forced to concede the point, in order to contest it.

Plaintiffs correctly note that with the 1996 Act, Congress essentially created two federal habeas schemes: one that applies to death row prisoners in states that meet Chapter 154's appointment of counsel requirements, and a second scheme that applies to everyone else. Nothing in the habeas statutes, including the 1996 Act, describes how a prisoner can secure a determination as to which of the two schemes apply to his state and, for this reason, this § 1983 action is not "inconsistent" with any preferred mechanism in the habeas scheme.

In sum, Plaintiffs have persuasively demonstrated that the habeas statutory framework does not preclude Plaintiffs from pursuing relief through a § 1983 action.

### 2. Claim Under § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988) (citations omitted). Thus, "[a] determination that § 1983 is available to remedy a statutory or constitutional violation involves a two-step inquiry." *Golden State Transit v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989).

First, the plaintiff must assert the violation of a federal right. *Id.* (citing *Sea Clammers Assoc.,* 453 U.S. at 19, 101 S.Ct. at 2625 (1981)) (hereinafter "*Sea Clammers*").

### a. Violation of a Right: Knowledge of Statute of Limitations

In response to Plaintiffs' assertion that they have a right to know the applicable statute of limitations that will govern their access to litigate federal habeas claims, Defendants respond that the federal habeas corpus statute, and particularly its statute of limitations provision, does not create a right secured by federal law and that not all federal statutes create rights enforceable through § 1983. See Sea Clammers, 453 U.S. at 13–21, 101 S.Ct. at 2622–27. Defendants state that if there is any constitutional right at stake in this case, it is a prisoner's right not to be subjected to an unconstitutional statute of limitations, not a right to know what the statute of limitations is before it is applied to his case. Defendants further contend that they have no due process obligation to inform Plaintiffs of the applicable statute of limitations, citing in support Texaco, Inc. v. Short, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

Defendants' reliance on Texaco, however, is misplaced. In Texaco, the owners of lapsed mineral interests filed actions challenging an Indiana statute which provided that a mineral lease that was not used for 20 years would automatically lapse unless the owner filed a statement of claim in the local county recorder's office. The statute did not require the state to give specific notice to a mineral owner prior to the lapse of his mineral estate. Texaco plaintiffs claimed inter alia, that the state's failure to provide them with prior individual notice of the impending lapse of their mineral rights deprived them of property without due process of law. The Supreme Court rejected the argument, holding that the due process clause did not require the state to notify an owner that the statute of limitations was about to run and noting that the state may impose the burden on the owner to keep informed of the use or nonuse of his property.

In the instant case, Plaintiffs are not seeking an injunction to force Commonwealth officials to send notice to each death row prisoner stating when the statute of limitations on his prospective federal habeas claim expires. The instant case is distinguishable from Texaco in that here, even the most diligent and investigative litigant can not determine what statute of limitations applies in Pennsylvania.

In Texaco, there was no legal uncertainty that a mineral interest owner would lose his rights after 20 years unless he recorded the interest. By contrast, in the instant case, unless and until the "responsible state actors" declare whether Pennsylvania is an opt-in or opt-out state, no habeas petitioner can possibly know with any degree of certainty which statute of limitations applies, and as long as this uncertainty exists, Plaintiffs are deprived of their due process rights.

In addition to arguing that Defendants' refusal to declare that Pennsylvania is an opt-out state violates their due process rights under the Fourteenth Amendment, Plaintiffs further argue that this refusal violates the Eighth Amendment. The Eighth Amendment's requirement for heightened procedural safeguards in capital cases is violated when prisoners do not know the applicable statute of limitations. See Woodson v. North Carolina, 428 U.S. 280, 304–05, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (holding that state's mandatory death sentence for first-degree murder violated Eighth and Fourteenth Amendments upon finding inter alia, that because of the qualitative difference between death and life imprisonment, there is corresponding difference in the need for reliability in determining that death is appropriate punishment in specific case); see also Spaziano v. Florida, 468 U.S. 447, 468, 104 S.Ct. 3154, 3166–67, 82 L.Ed.2d 340 (1984) (Steven, J., concurring in part and dissenting in part) (noting that since Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), every member of the Supreme Court has written or joined at least one opinion recognizing that because the death sentence is qualitatively different from any other punishment, it must be accompanied by unique safeguards).

Finally, with respect to their constitutional claims, Plaintiffs correctly assert that they have been deprived of the equal protection of the law in that all non-capital Pennsylvania prisoners know that a one-year statute of limitations governs the filing of their federal

habeas petitions, while death sentenced prisoners do not know whether the 180–day or one-year statute of limitations applies to them due to Defendants' refusal to declare Pennsylvania's status. *See, e.g., Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 876, 31 L.Ed.2d 36 (1972) (holding that where a state affords appellate review, such review cannot be granted to some litigants and arbitrarily denied to others without violating the equal protection clause) (citations omitted).

### b. Persons Acting Under Color of State Law

#### 1. Governor Ridge

■ Defendant Ridge, as Governor, has "supreme executive power," Pa. Const. Art. IV, § 2, and the responsibility "to take care that the laws of the Commonwealth shall be faithfully executed." 71 Pa.Stat. § 241(a) (West 1990). On this basis, Plaintiffs' contend, the Governor has the power to declare that Pennsylvania is not an opt-in jurisdiction.

Furthermore, the Governor has the authority to appoint or remove officers, such as the Commissioner of the Department of Corrections, Pa. Const. Art. 6, § 7. As such, if the Commissioner fails to execute his legal obligations, i.e., by asserting in federal habeas proceedings that Pennsylvania is an opt-in state, the Governor can remove the Commissioner. Thus, in the event that this Court issues the requested injunction, the Governor has the power to direct its enforcement.

Despite the fact that the Attorney General is elected in Pennsylvania, Plaintiff's argue that the Governor has the power to insure the Attorney General's compliance with the findings of this Court that Pennsylvania is not an opt-in state. As in the case of the Commissioner, when the Governor specifically authorizes it, the Governor may direct the General Counsel to step into the breach and replace the Attorney General, pursuant to 71 Pa.Stat. § 732–301 (1990).[6] Thus, if the Attorney General asserts the shorter statute of limitations in defending a habeas action, the Governor can step in to correct this misassertion.

The Governor also has specific powers related to carrying out the death penalty. The Supreme Court of Pennsylvania is required to submit a full and complete record to the Governor after it finishes judicial review of a death sentence, 42 Pa.Cons.Stat.Ann. § 9711(i) (West 1996), and the Governor must sign death warrants. 42 Pa.Cons.Stat. Ann. § 9711(j)(1) (West 1996). Therefore, the Governor plays an integral role in the fate of the death row prisoners.

Plaintiffs argue that on the basis of his general constitutional and statutory authority to see that the laws are faithfully executed, his specific authority to oversee the Commissioner—and in certain cases the Attorney General—as well as his role in carrying out the death penalty, Defendant Ridge has the right to declare that Pennsylvania is not an opt-in state and the power to enforce that

---

**6.** The statute reads, in relevant part, as follows: There is hereby established the Office of General Counsel which shall be headed by a General Counsel appointed by the Governor to serve at his pleasure who shall be the legal advisor to the Governor and who shall:

　　*　　*　　*　　*　　*　　*

(6) Initiate appropriate proceedings or defend the Commonwealth or any executive agency when an action or matter has been referred to the Attorney General and the Attorney General refuses or fails to initiate appropriate proceedings or defend the Commonwealth or executive agency.

71 Pa.Stat. § 732–301 (West 1990).

Furthermore, the Governor may direct the General Counsel to supersede the Attorney General or to have the General Counsel intervene:

(a) Representation of agency by General Counsel.—Whenever any action is brought by or against any executive branch agency, the Governor or other executive branch official, the Governor may request in writing, setting forth his reasons, the Attorney General to authorize the General Counsel to supersede the Attorney General and represent the agency, the Governor or other executive branch official.

(b) Intervention by General Counsel.—If the Attorney General does not grant the request, the Governor may authorize the General Counsel to intervene in the litigation. Such intervention shall be a matter of right and when exercised, confer upon the General Counsel the obligation to represent the Governor and his interests as Chief Executive Officer of the Commonwealth and its Executive Department. The Attorney General shall at all times continue to represent the Commonwealth.

71 Pa.Stat. § 732–303.

declaration. In the absence of such a declaration, argue Plaintiffs, the Governor, nonetheless, has the authority to insure that a court order to the effect that Pennsylvania is not an opt-in jurisdiction is upheld by Commonwealth officials.

The Court is not thoroughly convinced of the propriety of Governor Ridge's status as a defendant in this suit. Notwithstanding the fact that this question remains somewhat murky, I believe that Plaintiffs' have made a case against the Governor in a manner sufficient to survive the Motion to Dismiss. The Governor, therefore, at this time, remains a defendant.

### 2. Commissioner Horn

The proper respondent in a federal habeas action is the state official with custody or control over the petitioner. *See* 28 U.S.C.A. § 2242 (West 1994); *Gaito v. Strauss,* 368 F.2d 787, 788 (3d Cir.1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 139 (1967). Thus, as Commissioner of the Pennsylvania Department of Corrections, Defendant Horn would be the proper respondent in any federal habeas petition brought by a member of the putative class. Plaintiffs note that the other proper respondents in federal habeas actions, the superintendents of individual prison facilities, are subject to Defendant Horn's authority. As both Defendants and Plaintiffs correctly point out, the statute of limitations is not jurisdictional and will be waived if not asserted by Defendant Horn in a federal habeas proceeding. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), *reh'g denied,* 456 U.S. 940, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982); *Schafer v. Bd. of Public Educ.,* 903 F.2d 243, 251 (3d Cir.1990).

Therefore, Defendant Horn can secure Plaintiffs' rights by declaring that neither he, as the respondent in a habeas action, nor any individual prison superintendent under his supervision will raise Chapter 154's 180–day statute of limitations against any death row prisoner who files his petition after 180 days but in less than a year after exhaustion of direct appeals. Defendant Horn remains in this suit.

### 3. Attorney General Corbett

Plaintiffs note that as "chief law enforcement officer of the Commonwealth," 71 Pa.Cons.Stat.Ann. § 732–206 (West 1990), Attorney General Corbett has the duty to "furnish legal advice concerning any matter or issue arising in connection with the exercise of the official powers or the performance of the official duties of the Governor or agency." Such "advice when received shall be followed." 71 Pa.Cons.Stat.Ann. § 732–204(a)(1) (West 1990). As Defendant Corbett correctly points out, however, his power to furnish legal advice is limited to occasions on which such advice is requested by the Governor or the head of a Commonwealth agency. *Id.* He also has the duty to "review for form and legality, all proposed rules and regulations of Commonwealth agencies." 71 Pa. Cons.Stat.Ann. § 732–204(b) (West 1990). No proposed rule or regulation is at issue in this case, however.

Plaintiffs, nonetheless, make a persuasive argument that Attorney General Corbett is a proper Defendant in the instant case by demonstrating his role in criminal appeals and federal habeas petitions. First, the Attorney General appears as counsel for the Commonwealth in virtually every state capital appeal. (See Pls.' Mem. Opp'n Mot. Dismiss Ex. A) (listing 135 Pennsylvania Supreme Court capital cases in which the Attorney General has appeared as counsel for the Commonwealth). Second, and more importantly, the Attorney General has appeared either as a respondent or as counsel for respondent in many federal habeas actions, including capital cases. (Pls.' Mem. Opp'n Mot. Dismiss at 48) (listing cases in which the Attorney General has appeared as a respondent or counsel for respondents). For this reason, like Defendant Horn, Defendant Corbett is in a position to state that neither he nor any one under his authority will assert Chapter 154's limitations period in a habeas action.

Defendant Corbett counters that simply because he is named as a respondent in many petitions does not mean that he is a proper respondent. Defendant Corbett insists that he is not a proper defendant because he does not have custody or control over death row

prisoners. Moreover, the Attorney General, he maintains, appears as counsel in habeas proceedings merely at the Attorney General's discretion or option. Nonetheless, Plaintiffs have demonstrated a sufficient nexus between Defendant Corbett and the issues and parties in this matter such that Defendant Corbett remains in this suit.[7]

The Court is mindful that determining the proper Defendants in this suit is bedeviling indeed. However, as Plaintiffs correctly note, "[u]nder Rule 12(b)(6) and *Conley,* the complaint must be read in the light most favorable to plaintiff and all doubts must be resolved in plaintiff's favor. Accordingly, to the extent that the [D]efendants rely on factual assertions concerning the extent of the authority that they typically or even always exercise in habeas proceedings [as a basis for being excused from this suit], those assertions raise factual issues that cannot be resolved in a motion to dismiss." (citation omitted).

### 3. Plaintiffs' Claim for Injunctive Relief

[A] plaintiff who has brought his case within the [Ex Parte] Young doctrine must still overcome the other statutory and court-made barriers to such injunctions, and he must meet the usual equitable requirements for an injunction. "[N]o injunction ought to issue against officers of a State clothed with authority to enforce the law in question, unless in a case reasonably free from doubt and when necessary to prevent great and irreparable injury."

17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4232 (1988) (quoting *Massachusetts State Grange v. Benton,* 272 U.S. 525, 527, 47 S.Ct. 189, 189–90, 71 L.Ed. 387 (1926)).

### a. A Federal Right

First, Defendants argue that no federal right has been violated. This issue is ad-

dressed in II.C(2)(a) *supra* and resolved in favor of Plaintiffs.

### b. Adequate Remedy at Law, i.e., Through Habeas Corpus Litigation

Second, Defendants contend that Plaintiffs have an adequate remedy at law, i.e., Plaintiffs can resort to habeas corpus litigation. This issue is addressed in Part II.C(1) *supra* and resolved in favor of Plaintiffs.

### c. Irreparable Harm

Third, Defendants contend that Plaintiffs have failed to demonstrate that they will suffer immediate irreparable harm. Defendants contend that plaintiffs' allegations of future harm are speculative because such harm will only occur if a number of contingencies transpire. This argument has been addressed in II.B(3) *supra* and resolved in favor of Plaintiffs.

### d. Equitable Relief Requested by Plaintiffs

 Citing the 1996 Act's legislative history, the *Ashmus* court found that Congress "has entrusted to the federal judiciary the responsibility and obligation for determining whether Chapter 154 applies to a given state." *Ashmus,* 935 F.Supp. at 1057 (citing, *inter alia,* Powell Committee Report at 3242). The *Ashmus* court issued a declaration that California had failed to comply with Chapter 154 and therefore Chapter 154's provisions were inapplicable to any member of the provisionally certified class. The declaration remains in effect "until and unless the State of California demonstrates to this Court" that it has complied with the opt-in provisions. 935 F.Supp. at 1075. Moreover, the *Ashmus* court issued an injunction enjoining the defendants from "trying or seeking to obtain for the State of California the benefits" of Chapter 154 in any state or federal proceeding involving any class member. *Id.* at 1076.

---

**7.** Plaintiffs also attempt to argue that the Attorney General has the power to restrain the county district attorneys from asserting the 180–days statute of limitations, citing in support 71 Pa. Cons.Stat.Ann. § 732–205(a)(4) (West 1991). But that statute provides that the Attorney Gen-

eral shall have the power to supersede the district attorney in prosecuting a criminal action if he proves to a court that the district attorney has abused his discretion by prosecuting or failing to prosecute. Because habeas is a civil action, this statute seems inapplicable.

Under the analysis in Part II.B(2) *supra*, enjoining Commonwealth officials from arguing in a *federal* habeas proceeding that Chapter 154 applies would not violate the *Younger* abstention doctrine.[8]

Therefore, the Court has the authority to issue a declaration as to whether Pennsylvania fulfills Chapter 154's appointment of counsel requirements and, upon a finding that it does not, to enjoin Defendants Horn and Corbett from asserting otherwise in defending a federal habeas petition.

An appropriate Order follows.

### ORDER

**AND NOW,** this 17th day of October, upon consideration of Plaintiffs' Complaint (Doc No. 2), oral argument held on May 1, 1996, Motion to Dismiss of Defendants Ridge and Horn (Doc. No. 27), Defendant Corbett's Motion to Dismiss (Doc. No. 24), Brief in Support of Their Motion to Dismiss by Defendants Ridge and Horn (Doc. No. 26), Defendant Corbett's Brief in Support of His Motion to Dismiss (Doc. No. 24), Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Doc. No. 32), Reply Brief of Defendant Corbett in Support of His Motion to Dismiss (Doc. No. 34), Plaintiffs' Surreply Brief in Response to Reply Brief of Defendant Corbett (Doc. No. 35), Plaintiffs' Notice of Supplemental Authority (Doc. No. 37), Response by Defendants Ridge and Horn to Plaintiffs' Notice of Supplemental Authority (Doc. No. 42), Response by Defendant Corbett to Plaintiffs' Notice of Supplemental Authority (Doc. No. 43), Plaintiffs' Second Notice of Supplemental Authority (Doc. No. 44), oral argument held on August 22, 1996, Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendants' Motions to Dismiss (Doc. No. 51), Response of Defendants Horn and Ridge to Plaintiffs' Supplemental Memorandum (Doc. No. 59), Defendant Corbett's Supplemental Memorandum of Law in Support of His Motion to Dismiss (Doc. No. 60),

Plaintiffs' Third Notice of Supplemental Authority (Doc. No. 62), Response of Defendant Corbett to Plaintiffs' Third Notice of Supplemental Authority (Doc. No. 63), and Response of Defendants Ridge and Horn to Plaintiffs' Third Notice of Supplemental Authority (Doc. No. 64), **IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion is **DENIED.**[1]

---

8. To the extent that Plaintiffs also request that Commonwealth officials be enjoined from asserting Chapter 154's applicability in any *state* proceeding, this may well be improper under *Younger*.

1. This denial does not pertain to Defendants' request that this Court dismiss Plaintiffs' freestanding request for counsel under 21 U.S.C. § 848(q)(4)(B). This matter will be addressed by the Court at a later date.