### NEW JERSEY HOSPITAL ASSOCIATION, Plaintiff,

v.

The **UNITED STATES of America, and in their official capacities, Janet Reno, Attorney General, Donna E. Shalala, Secretary of Health and Human Services, and June Gibbs Brown, Inspector General of the Department of Health and Human Services, Defendants.**

Civ.No. 98–1421(GEB).

United States District Court,
D. New Jersey.

Aug. 31, 1998.

---

51. The conspiracy claim under NJ RICO § 2C:41–2d cannot suffice as a predicate for a common law claim of conspiracy.

James V. Hetzel, Kalison & McBride, P.A., Liberty Corner, NJ, for plaintiff.

Henry A. Azar, Jr., U.S. Department of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court upon the motion of defendants the United States of America, Janet Reno, Donna E. Shalala, and June Gibbs Brown, to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1). For the reasons set forth in this Memorandum Opinion, the Court will grant defendants' motion to dismiss.

## I. BACKGROUND

This matter arises from the filing of a complaint by plaintiff, the New Jersey Hospital Association, against defendants, the United States, Janet Reno (as Attorney General), Donna E. Shalala (as Secretary of Health and Human Services), and June Gibbs Brown (as Inspector General of the Department of Health and Human Services). Plaintiff alleges that defendants, specifically the Department of Justice ("DOJ"), on behalf of the Attorney General, are using threats of suit under the False Claims Act and proposed offers of settlement in a coercive manner to resolve disputes between plaintiff's member hospitals and the DOJ regarding overpayment of benefits to the hospitals in violation of the Window Rule of the Medicare Act. Plaintiff asserts violations by the defendants of the Administrative Procedure Act, the Fifth Amendment, and the False Claims Act, and seeks a declaratory judgment from this Court that defendants have in fact violated all of the aforementioned. Defendants, in response, filed the instant motion to dismiss, arguing that the DOJ's actions do not constitute final agency action, and thus are unreviewable by this Court, and that plaintiff's

claims are nonjusticiable in that they are not yet ripe for judicial review.

## II. DISCUSSION

### A. STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

A district court may grant a motion to dismiss for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1) based on the legal insufficiency of a claim. Dismissal pursuant to FED.R.CIV.P. 12(b)(1) is only proper, however, when the claim " 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.' " *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1408–09 (3d Cir.1991) (quoting *Bell v. Hood,* 327 U.S. 678, 683, 66 S.Ct. 773, 90 L.Ed. 939 (1946)), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). On a FED.R.CIV.P. 12(b)(1) motion, plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. *See id.* at 1409. The factual allegations of plaintiff's complaint must be accepted as true. *See Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).

The threshold issue in the matter before the Court is whether, pursuant to the Administrative Procedures Act ("APA"), this Court has jurisdiction to adjudicate plaintiff's claims. The APA provides that agency action may be reviewed by a district court only in those situations where: (1) the agency action is final, *see* 5 U.S.C. § 704; (2) the plaintiff has "no other adequate remedy in a court," *id.;* or (3) the action is not "committed to agency discretion by law," 5 U.S.C. § 701(a)(2).

The question then becomes whether the actions of the DOJ in providing settlement letters to plaintiff's member hospitals constitute final agency action, for which there is no other adequate remedy in a court and for which the action has not been committed to agency discretion by law, for purposes of judicial review. This Court finds that the DOJ's actions are not final, that plaintiff has available to it other adequate remedies in a court, and that the agency's actions have been committed by law to agency discretion.

Therefore, this Court lacks jurisdiction to address the merits of plaintiff's claims.

The Third Circuit, in *Solar Turbines Incorporated v. Seif,* set forth five considerations to be addressed in assessing the finality of an agency action: (1) does the agency action represent the definitive position of the agency; (2) does the agency pronouncement have the status of law, so as to expect immediate compliance; (3) does the agency action have an immediate impact on plaintiff's daily operations; (4) is the dispute regarding a pure question of law, without the need for factual development; and (5) will a pre-enforcement challenge speed up enforcement of the relevant act. *See Solar Turbines, Inc. v. Seif,* 879 F.2d 1073, 1080 (3d Cir.1989) (citing *Federal Trade Comm'n v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239–40, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)). Finality is to be determined in a pragmatic way. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

In *Standard Oil,* the Supreme Court held that the Federal Trade Commission's issuance of a complaint averring there was "reason to believe" that a party was in violation of the Federal Trade Commission Act was insufficient to satisfy the finality requirement. *See Standard Oil,* 449 U.S. at 239, 243, 101 S.Ct. 488. The Supreme Court explained that "reason to believe" was merely a determination that adjudicatory proceedings would commence, and the actual issuance of the complaint was sufficient only to initiate the proceedings. *See id.* at 242, 101 S.Ct. 488. The complaint issued in that case had no effect on the daily operations of defendant's business, nor did it have any legal force compelling a party to do something or refrain from doing something. *See id.*

In considering the case at bar, the DOJ's actions clearly do not represent the definitive position of the DOJ on this matter. These settlement letters merely indicate a belief by the DOJ that plaintiff's member hospitals may have violated the Medicare Act. Mere "reason to believe" that a party has violated some statutory framework is not a definitive statement of position, but rather "a threshold determination that further inquiry is warranted and that a complaint should initiate

proceedings." *See Standard Oil*, 449 U.S. at 241, 101 S.Ct. 488. Thus, the first step of the analysis is not satisfied.

Second, the DOJ's actions and assertions in dealing with the alleged overpayments do not rise to the status of law, such that immediate compliance is expected. These settlement letters are not a regulation or administrative order that, if not complied with, will subject plaintiff's member hospitals to future civil or criminal liability. They are merely efforts to resolve the overpayment disputes that have been determined to exist by the DOJ. It is not yet even certain that suits pursuant to the False Claims Act ("FCA") will be filed against plaintiff's members. Furthermore, these settlement letters also serve the purpose of allowing the member hospitals to contest the alleged overpayments, and bring any errors by the DOJ to the agency's attention, so that a correct determination of overpayment, if any, can be made.

Third, the DOJ's actions do not have an immediate impact on the daily operations of plaintiff's member hospitals. These institutions are still able to carry out their medical services and provide care to patients. These settlement letters are an effort to correct alleged overpayments in the past, and would require the hospitals to implement certain measures to ensure that overpayments do not occur in the future. This effort by the DOJ in no way affects the daily operations of plaintiff's member hospitals, and thus this step of the analysis is not satisfied either.

Fourth, the dispute in the instant action is not over a pure question of law. The issues in the instant action require extensive factual development beyond that already performed by the DOJ in determining that overpayments occurred. As plaintiff emphasizes, a necessary element of a violation of the FCA is scienter. The DOJ's efforts have merely uncovered overpayments, and have not examined whether each member hospital acted with the necessary state of mind to be liable under the FCA. This factual determination will require significantly more time and effort by the DOJ, and this Court cannot say that the issues in the case at bar are pure questions of law. Therefore, this step of the analysis is not satisfied.

The fifth step of the analysis asks whether a pre-enforcement challenge will speed enforcement of the relevant act. This question must also be answered in the negative. Intervention by the Court at this stage of the proceedings between plaintiff and the DOJ will serve only to frustrate any efforts that might be made between the parties to settle their disputes as to alleged overpayments. Additionally, the overpayments at issue in the instant action are alleged to have occurred in the past. Any challenge addressed by the Court at this time will not speed up enforcement of the act; the act is currently in effect, and the issues at bar deal with alleged past violations of the act.

Inasmuch as plaintiff is unable to satisfy the five steps of the final agency action determination, this Court lacks jurisdiction, pursuant to the terms of the APA, to review plaintiff's claims. Therefore, the Court will grant defendants' motion to dismiss.

■ Assuming, arguendo, that the actions of the DOJ constituted final agency action for the purposes of this action, these actions would be reviewable only if no other adequate remedy was available to plaintiff in a court. This clearly is not the case in the matter before this Court. Plaintiff asserts on numerous occasions throughout its brief that the DOJ would not be able to establish that the member hospitals acted with the scienter necessary to bring a viable claim under the FCA. Thus, plaintiff is arguing that its members have the defense of lack of necessary intent to defeat any FCA action the DOJ might bring. With this defense, plaintiff's members do have an adequate remedy in a court—the ability and opportunity to raise a defense to an FCA action by the DOJ. Thus, this Court lacks jurisdiction over plaintiff's claims on this basis.

■ Finally, this Court may review a final agency action only when it has not been committed to agency discretion by law. The terms of the FCA place the decision of whether to file suit against a party found to have violated the Act solely within the discretion of the Justice Department. *See* 31 U.S.C. § 3730(a) ("If the Attorney General finds that a person has violated or is violating section 3729 [the elements of the FCA], the

Attorney General *may* bring a civil action under this section against the person." (emphasis added)). The Justice Department and the Attorney General are in the best position to assess the results of the investigation, as well as the application of agency policy and available resources, to the factual circumstances before them. It is solely within their discretion whether to prosecute an FCA action. Thus, even if the Court had determined that the DOJ's actions constituted final agency action under the terms of the APA, such action would be unreviewable by this Court inasmuch as that action has been committed by law to the sole discretion of the Justice Department. Therefore, the Court lacks jurisdiction over plaintiff's claims on this basis as well.

## B. RIPENESS

Assuming, arguendo, that this Court had jurisdiction to adjudicate plaintiff's claims, defendants contend that this suit is nonjusticiable because the issues presented in plaintiff's complaint are not yet ripe for adjudication. The ripeness doctrine is to be viewed "as a prudential limitation on federal jurisdiction . . . at least partially grounded in the case or controversy requirement." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir.1995). In reviewing plaintiff's complaint and the claims asserted therein, this Court finds that plaintiff's claims are not yet ripe for adjudication, and thus will dismiss plaintiff's complaint on this basis as well.

The Supreme Court, in *Ohio Forestry Association, Incorporated v. Sierra Club*, emphasized that the requirement of ripeness is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, — U.S. —, —, 118 S.Ct. 1665, 1670–71, 140 L.Ed.2d 921 (1998) (quoting *Abbott Labs.*, 387 U.S. at 148–49, 87 S.Ct. 1507). In evaluating whether an agency's decision is ripe, a court must look to both the "fitness of the issues for judicial decision" and the "hardship to the parties of withholding court consideration." *See id.* (quotation omitted); *see also Artway v. Attorney General of New Jersey*, 81 F.3d 1235, 1247 (3d Cir.), *reh'g denied*, 83 F.3d 594 (3d Cir.1996). The Supreme Court expanded this evaluation by explaining that a determination of ripeness requires consideration of the following: (1) whether a delay in review of the issues presented would cause hardship to the plaintiffs; (2) whether intervention by a court would inappropriately interfere with any further administrative action that might be taken; and (3) whether further factual development of the issues presented would benefit the court. *See Ohio Forestry*, 523 U.S. 726, —, 118 S.Ct. 1665, 1670–71.

In determining whether plaintiff will be caused significant hardship if this Court withholds consideration of the instant matter, the Court must examine whether the actions of the DOJ being challenged by plaintiff create "adverse effects of a strictly legal kind," of the type that would traditionally have qualified as harm, or whether the DOJ's actions would inflict significant practical harm upon the interests advanced by plaintiff. *See id.* In dealing with adverse effects of a strictly legal kind, the Court must examine whether the rules or actions at issue "command anyone to do anything or to refrain from doing anything . . . grant, withhold, or modify any formal legal license, power or authority . . . subject anyone to any civil or criminal liability . . . create no legal rights or obligations." *See id.* (citing *United States v. Los Angeles & Salt Lake R.R. Co.*, 273 U.S. 299, 309–10, 47 S.Ct. 413, 71 L.Ed. 651 (1927)). Likewise, in discussing the infliction of significant practical harm upon interests advanced by a party to a suit, the Supreme Court explained that when that party will have a sufficient opportunity to bring its challenge to the legality of a plan or regulation at some future time, when harm is "more imminent and more certain," the matter at issue is not ripe for adjudication by the courts. *See id.* A controversy is ripe for judicial review when the threat of prosecution "is credible, and not merely speculative." *See Gross v. Taylor*, 1997 WL 535872, at *9 (E.D.Pa.1997). A finding that a plaintiff cannot point to some way in which a challenged action or regulation could force it to modify or alter its behavior in order to avoid future

adverse consequences supports the conclusion that an issue is not ripe for judicial review. *See Ohio Forestry,* —— U.S. ——, ——, 118 S.Ct. 1665, 1670–71; *see also Wilmac Corp. v. Bowen,* 811 F.2d 809, 813 (3d Cir.1987) (holding that a challenge was not ripe because the plaintiff was not threatened with any injury or ·sanction by completing construction of a facility, no action was compelled, and the placement of the plaintiff's future economic return in some uncertainty was, alone, insufficient hardship to warrant review).

 Turning to the case at bar, plaintiff would not suffer any hardship if this Court withholds consideration of the issues presented in plaintiff's complaint. For a complaint to be ripe, the injury alleged must be real, and not hypothetical or speculative. *See Gross,* 1997 WL 535872, at \*8. Whether the DOJ will file FCA actions against plaintiff's member hospitals remains to be determined. Thus, plaintiff has not suffered any actual injury thus far, and has also failed to demonstrate that its member hospitals are in imminent danger of injury via prosecution under the FCA. When, as in the case before this Court, it is "a matter of pure speculation" whether a party will be subjected to liability, and this determination hinges on the "unpredictable future decisions" of the agency possessing the authority to enforce a particular statutory scheme, the element of hardship is not satisfied. *See Gross,* 1997 WL 535872, at \*9. Thus, plaintiff fails to meet the first requirement for its cause of action to be ripe.

Second, intervention by this Court at this juncture of the proceedings between plaintiff and defendants would inappropriately interfere with any further administrative action that might be taken by defendants. In cases dealing with administrative agency actions, "the courts must weigh heavily· the need to protect agencies from judicial interference until they have completed their work and the concrete effect upon plaintiffs can be determined." *Trinity Resources, Inc. v. Township of Delanco,* 842 F.Supp. 782, 801 (D.N.J. 1994) (citing *Felmeister v. Office of Attorney Ethics,* 856 F.2d 529, 535 (3d Cir.1988)).

As set forth previously, it is within the sole discretion of the Attorney General, through the Justice Department, to decide whether an FCA action will be filed against plaintiff or its member hospitals. This determination has not yet been made; rather, only attempts at settling the disputes regarding the alleged overpayments have taken place. It is clearly within the realm of possibility that upon further factual investigation by the DOJ, it may be determined ·that the requisite elements of an FCA claim have not been met by plaintiff's members, and that a lawsuit for violations of the FCA would not be in defendants' best interests. However, were the Court to intervene at this stage of the proceedings, this determination could not be made; the Court would have already determined that a viable FCA claim could be made against plaintiff's members, and then address the merits of such claim. It being within the sole discretion of the DOJ as to whether an action should be brought, action by this Court at this time would inappropriately remove that decision from the discretion of the DOJ and place it with this Court. Such a result is clearly inappropriate, and the Court finds that this step of the analysis is not satisfied.

Finally, review of plaintiff's claims at this juncture would require this Court to determine the legality of defendants'· actions absent a factual context to provide focus and clarity for the evaluation. Absent any showing of harm at this time, plaintiff's complaint seeks in effect to have this Court issue an advisory opinion as to the constitutionality of the DOJ's actions. "The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy." *United States Nat'l Bank of Oregon v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975)). Furthermore, the Supreme Court has specifically advised that federal courts lack the power to render advisory opinions. *See id.; Preiser,* 422 U.S. at 401, 95· S.Ct. 2330; *Flast v. Cohen,* 392 U.S. 83, 97, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). The requirement of an actual case or controversy has been construed as requiring that from its commencement, a suit must be the "pursuance of an honest and actual antagonistic assertion of rights by one [party] against

another." *Muskrat v. United States*, 219 U.S. 346, 359, 31 S.Ct. 250, 55 L.Ed. 246 (1911). Such an action must implicate "valuable legal rights ... [that would] be directly affected to a specific and substantial degree" by a decision of the Court as to the legality or constitutionality of a regulation or party's actions. *United States Nat'l Bank of Oregon*, 508 U.S. at 446, 113 S.Ct. 2173 (quotation omitted); *see also Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 902 F.Supp. 492, 504 (D.N.J.1995) (stating that granting a declaratory judgment absent some concrete set of facts would be a "contingency," and subsequent application of the declaratory judgment to controversies would be an "exercise in futility") (citations omitted), *aff'd*, 99 F.3d 101 (3d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1334, 137 L.Ed.2d 494 (1997).

In the instant litigation, this Court has not been presented with any case or controversy for its review. Plaintiff filed the instant complaint in response to settlement demand letters sent to its member hospitals by the DOJ. These member hospitals have not yet been sued by the DOJ, nor has the threat of suit been made to the hospitals. Instead, plaintiff's member hospitals have been advised that in the event that a settlement of the alleged overpayments is not reached, the federal government may file suit. Asking this Court for a declaratory judgment that the member hospitals have not satisfied the scienter requirement of the FCA, when such an assertion would be a defense to a suit filed pursuant to the FCA and no such suit has yet been filed against any member hospital, is asking this Court for an advisory opinion on the merits of some potential future litigation. *See Death Row Prisoners of Pa. v. Ridge*, 948 F.Supp. 1258, 1269 (E.D.Pa.1996) (stating that ripeness requires a real and substantial controversy necessitating "specific relief through a degree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts"). Further factual development of the issues presented by plaintiff in the complaint is clearly necessary, by both plaintiff and defendants, to determine if this matter even needs to come before a court and, if so, to allow the issues to be adjudicated. Therefore, this step of the analysis is also not met.

As in the *Association of American Medical Colleges* case, plaintiff in the matter before this Court has not established a threat to the ongoing operations of its member hospitals, but rather only a threat that certain past practices will subject them to enforcement actions. *See Association of American Medical Colleges v. United States*, No. CV 98–1734 CM (Rcx), slip op. 20 (C.D.Cal. Apr. 28, 1998). The *American Medical Colleges* court found that this threat of possible enforcement was insufficient to overcome the ripeness hurdle. *See id.* For there to be present harm from the threat of future action, there must be a real and substantial probability that the future event will occur, and such future event cannot be a mere contingency. *See Bell Atl. Corp. v. MFS Communications Co., Inc.*, 901 F.Supp. 835, 843 (D.Del.1995). The case at bar presents the same set of circumstances as that found in *American Medical Colleges*. The only threat at issue in the instant action is the threat of possible enforcement of the FCA against plaintiff's member hospitals, and no such lawsuit has been filed yet. This potential threat is not sufficient to meet the burden for an issue to be deemed ripe. Therefore, this Court will dismiss plaintiff's complaint inasmuch as the issues presented therein are not ripe for adjudication.

## III. CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1). An appropriate form of Order is filed herewith.